DECISION AND JUDGMENT ENTRY
{¶ 1} Attorney General Nancy Rogers has filed a complaint for a writ of prohibition alleging that Judge William T. Marshall lacked jurisdiction to grant a Civ. R. 60(B) motion to vacate a judgment filed by Adrian L. Rawlins in a separate criminal proceeding.[1] Despite Judge Marshall's and Rawlins' assertions to the contrary, Attorney General Rogers has common law standing to protect the state of Ohio's *Page 2 
interest in the administration of justice and can pursue this action. And, because Judge Marshall patently and unambiguously lacked jurisdiction to entertain the motion after we had expressly ruled in Rawlins' direct appeal on the same issue the motion presented, we grant the writ.
 {¶ 2} In 1997, a jury found Rawlins guilty of murder with a firearm specification and the trial court sentenced him to fifteen years to life imprisonment. Rawlins appealed his conviction to this court, assigning as error the trial court's refusal to give jury instructions on the lesser included offenses of involuntary and voluntary manslaughter, and the exclusion of the testimony of a psychiatric expert. In December 1998, we specifically rejected these arguments and affirmed Rawlins' conviction. See State v. Rawlins (Dec. 24, 1998), Scioto App. No. 97CA2539, 1998 WL 961056. The Supreme Court of Ohio did not review the case.
 {¶ 3} In May 2003, Rawlins filed a motion in the criminal case for relief from judgment under Crim. R. 57(B) and Civ. R. 60(B). The state filed its opposition to the motion, but the trial court did not rule on the motion in either 2003 or 2004. After a request by Rawlins in January 2005, newly elected Judge Marshall scheduled a hearing on the motion.[2]
 {¶ 4} At the hearing, Rawlins sought relief from his conviction based on his claim that the jury should have been given instructions on voluntary and involuntary manslaughter. The state did not object to Rawlins' Civ. R. 60(B) motion at the hearing. In spite of our prior contrary ruling, which became law of the case on this issue, Judge *Page 3 
Marshall granted Rawlins' motion with the understanding that Rawlins was going to enter into a negotiated plea. Rawlins then pled guilty to voluntary manslaughter and Judge Marshall sentenced him to a prison term of ten years. Immediately after sentencing him, Judge Marshall granted Rawlins judicial release and placed him on probation.
 {¶ 5} Shortly thereafter, the attorney general filed a complaint for a writ of prohibition alleging that Judge Marshall lacked jurisdiction to grant Rawlins' motion for relief from judgment, and ultimately to release him from prison. On October 10, 2006, we granted the writ and ordered Judge Marshall to vacate his entry granting Rawlins' Civ. R. 60(B) motion and related relief, including his acceptance of the guilty plea to voluntary manslaughter.
 {¶ 6} In response to our entry, Rawlins filed a motion to intervene as a respondent and a motion for relief from judgment under Civ. R. 60(B) seeking to vacate the writ. We granted the motion to intervene and ordered the parties to respond to the motion for relief from judgment. Rawlins filed a notice of appeal from the October 10, 2006 entry in the Supreme Court of Ohio but also filed a motion for a limited remand so we could rule on his motion for relief from judgment. After the Supreme Court of Ohio granted the motion for a limited remand, we granted the motion for relief from judgment and vacated the writ. We then allowed all parties to submit additional evidence, file briefs and participate in oral argument.
 I. STANDING {¶ 7} Before turning to the merits of Attorney General Rogers' complaint, we must address Judge Marshall and Rawlins' contention that Attorney General Rogers *Page 4 
lacks standing to bring this action. If the relator lacks standing, we are duty bound to dismiss the complaint. See, e.g., Cleveland ex rel.O'Malley v. White, 148 Ohio App.3d 564, 2002-Ohio-3633, 774 N.E.2d 337, at ¶ 47.
 {¶ 8} In State ex rel. Matasy v. Morley (1986), 25 Ohio St.3d 22, 23,494 N.E.2d 1146, 1147, the Supreme Court of Ohio explained the criteria for standing:
 * * * a prohibition action may only be commenced by a person who is either a party to the proceeding sought to be prohibited * * * or demonstrates an injury in fact to a legally protected interest.
Attorney General Rogers was clearly not a named party to the proceedings below and, therefore, does not meet the first prong of the test. Although she does not explicitly argue that she has suffered any injury to a legally protected interest as a result of Judge Marshall's actions, Attorney General Rogers does contend that she is attempting to protect the interest of the state of Ohio in her capacity as the chief law enforcement officer for the state. Attorney General Rogers alleges that she has standing both as a citizen and at common law. We consider these assertions.
 A. Citizen Standing {¶ 9} Attorney General Rogers contends that she has standing as an Ohio citizen to bring this action. Attorney General Rogers relies on the Supreme Court of Ohio's holding in State ex rel. Ohio Academy of TrialLawyers v. Sheward, 86 Ohio St.3d 451, 1999-Ohio-123, 715 N.E.2d 1062, at paragraph one of the syllabus, to support her contention.
 {¶ 10} In Sheward, the Supreme Court applied a "public action" exception to the traditional standing rule, and allowed several Ohio organizations and a private individual to challenge the constitutionality of comprehensive tort reform legislation by an action in *Page 5 
mandamus. The Court recognized that in the context of a challenge to the constitutionality of a statute, when issues "sought to be litigated are of great importance and interest to the public, they may be resolved in a form of action that involves no rights or obligations peculiar to named parties." Id. at 471. However, the Court also made clear that it would "entertain a public action only `in the rare and extraordinary case' where the challenged statute operates, `directly and broadly, to divest the courts of judicial power.'" Id. at 504.
 {¶ 11} We reject the attorney general's arguments for standing based upon Sheward for several reasons. First, Attorney General Rogers is not attempting to challenge the constitutionality of a statute. Rather, she complains that Judge Marshall ignored the doctrine of law of the case. Given the widespread criticism that Sheward has generated, see, e.g., Chief Justice Moyer's catalogue of critical commentaries and opinions in his dissent in State ex rel. Ohio AFL-CIO v. Ohio Bureau of Workers'Comp., 97 Ohio St.3d 504, 2002-Ohio-6717, 780 N.E.2d 981, at ¶ 56 et seq., and the Sheward majority's own insistence that it be used only in rare and extraordinary circumstances, we decline to expand it to this scenario.
 {¶ 12} Beyond the fact there is no constitutional challenge upon which to append the Sheward exception, Judge Marshall's decision — however erroneous — does not have the widespread effect on the citizenry as a whole that is required to invoke the "public action" exception. Although this case may determine the very important question of whether a criminal conviction can be overturned by a trial court on the same grounds an appellate court has previously rejected, we are not faced with any constitutional questions nor will our decision alleviate any widespread problems in the *Page 6 
judicial system. In fact, the events in this case are highly unusual and may never be repeated again. The mere fact that a party seeks to raise a significant legal issue is not sufficient to warrant application of this very limited exception to the standing requirement. Rather, courts should utilize this rare exception only where the issue would have a widespread or substantial effect upon the public as a whole, and would result in serious public injury if standing were refused. See Bowers v.Ohio State Dental Bd. (2001), 142 Ohio App.3d 376, 381, 755 N.E.2d 948, citing Sheward, 86 Ohio St.3d at 471 and 503. See, also, Lager v.Plough, Portage App. No. 2006-P-0013, 2006-Ohio-2772, at ¶ 12-15.
 {¶ 13} We share Attorney General Rogers' frustration that in granting Rawlins' Civ. R. 60(B) motion Judge Marshall did not follow our holding in State v. Rawlins, supra. This concern is institutional: a trial court is obligated to follow the holdings of the court of appeals and the doctrine of law of the case. In this instance, it is possible that Judge Marshall and the prosecuting attorney were not aware of our prior holding in light of the fact they were not in their respective offices at the time we issued the decision. See fn. 2. However, it became law of the case in any event.
 B. Common Law Standing {¶ 14} Attorney General Rogers also asserts that she has common law standing to maintain this action because the Ohio Constitution does not specifically delineate the attorney general's authority; in the absence of constitutional restrictions, courts have recognized that the office of attorney general has all of the powers that attorneys general enjoyed at common law. Attorney General Rogers contends that the common law recognized the authority of attorneys general to commence actions to vindicate the *Page 7 
state's interest, even in the absence of an injury to that specific officer's personal or official interests. In her original reply brief, the attorney general states that "[t]his action is brought to enforce the judicial scheme * * * in Ohio." Therefore, we assume that this is the interest to which she refers.
 {¶ 15} Attorney General Rogers cites two cases in support of her contention that she does not need to have an individual interest to have standing in this case — State ex rel. Little v. Dayton South-EasternRailroad Co. (1881), 36 Ohio St. 434 and State ex rel. Crabbe v.Plumb (1927), 116 Ohio St. 428, 156 N.E. 457. In Little, the attorney general filed a petition to enjoin a railroad company from obstructing a public county road. The Supreme Court of Ohio noted that, prior to the adoption of the code governing public nuisances, the proper remedy was for the attorney general to file an information or bill. Little at 439. The Court also noted that the weight of authority demonstrated that the attorney general was authorized to institute public nuisance suits on behalf of the public, even without a relator. Id. at 440. InCrabbe, the attorney general brought a mandamus suit against a board of county commissioners when they failed to set apart and appropriate the sum of $1,500 to support agricultural extension work in the county as mandated by section 9921-5, General Code. The Supreme Court of Ohio found that the attorney general had the authority to "institute an action in mandamus against a public officer to require him to discharge a duty placed upon him by a mandatory statute * * *."
 {¶ 16} We believe these cases contain persuasive authority to support Attorney General Rogers' position, despite the fact that neither case is identical to the facts here. Little stands for the proposition that the attorney general has common law standing to *Page 8 
pursue nuisance actions on behalf of the state. Crabbe holds that the attorney general can institute a mandamus action when a public officer fails to comply with a mandatory statute.
 {¶ 17} Equally important legal interests are at stake here in the attorney general's efforts to obtain the common law writ of prohibition. If the attorney general can enjoin a public nuisance in the absence of an individual relator, surely the attorney general can promote the proper allocation of judicial power among Ohio's courts, notwithstanding the absence of the prosecuting attorney's participation. And if the attorney general has standing to require county commissioners to follow statutory legal duties, what rational basis can there be for denying standing to an attorney general who seeks to force a lower court to follow its constitutional and common law duty concerning the doctrine of the law of the case? Rather than preventing the attorney general from acting in such circumstances, we conclude the common law demands it.
 {¶ 18} Judge Marshall focuses much of his argument against the attorney general's standing on the specter of future interloping by the attorney general in criminal prosecutions. However, those are not the facts before us. Rather than interfering directly in the criminal proceedings, the attorney general has filed a distinct civil action that seeks to prohibit a court from acting where it purportedly lacks jurisdiction to do so. While we are skeptical that the attorney general has standing to direct a criminal prosecution without a request from the appropriate authorities or an explicit statutory mandate, we do not address that question here.
 {¶ 19} Accordingly, we conclude that Attorney General Rogers has common law standing to bring this action. *Page 9 
 II. MERITS OF PROHIBITION {¶ 20} A writ of prohibition is an extraordinary judicial writ; its purpose is to restrain inferior courts and tribunals from exceeding their jurisdiction. State ex rel. Tubbs Jones v. Suster,84 Ohio St.3d 70, 1998-Ohio-275, 701 N.E.2d 1002. A writ of prohibition is customarily granted with caution and restraint, and is issued only in cases of necessity arising from the inadequacy of other remedies. Id.; see, also,State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of CommonPleas, 74 Ohio St.3d 536, 540, 1996-Ohio-286, 660 N.E.2d 458, 461
("Prohibition is an extraordinary writ and we do not grant it routinely or easily.").
 {¶ 21} A writ of prohibition "tests and determines `solely and only' the subject matter jurisdiction" of the lower court. Tubbs Jones at 73, citing State ex rel. Eaton Corp. v. Lancaster (1988), 40 Ohio St.3d 404,409, 534 N.E.2d 46, 52. It does not lie where the court has made a mere error in the exercise of jurisdiction, i.e., simply reached a legally incorrect result. Brooks v. Gaul, 89 Ohio St.3d 202, 203, 2000-Ohio-133,729 N.E.2d 752. But see State ex rel. News Herald v. Ottawa Cty. Courtof Common Pleas, 77 Ohio St.3d 40, 1996-Ohio-354, 671 N.E.2d 5 (writ of prohibition was appropriate remedy to challenge lower court's gag order because once the order was enforced and the hearing conducted, relator would have no adequate remedy at law) and State ex rel. Connor v.McGough (1989), 46 Ohio St.3d 188, 546 N.E.2d 407 (writ of prohibition issued where trial court had subject matter jurisdiction but patently and unambiguously lacked personal jurisdiction over the defendant, a resident of Germany).
 {¶ 22} The writ is not limited to prospective application; it is also available to correct the results of previous jurisdictionally unauthorized actions. State ex rel. Rogers *Page 10 v. McGee Brown, 80 Ohio St.3d 408, 410, 1997-Ohio-334, 686 N.E.2d 1126. However, the writ is not available to stop enforcement of an erroneous judgment that a court having general authority over the underlying case has issued. Dubose v. Court of Common Pleas of Trumbull County (1980),64 Ohio St.2d 169, 171, 413 N.E.2d 1205.
 {¶ 23} In order for a writ of prohibition to issue, the relator must establish that: (1) the lower court is about to exercise judicial or quasi-judicial powers; (2) the exercise of the power is unauthorized by law; and (3) the denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. State ex rel.Henry v. McMonagle, 87 Ohio St. 3d 543, 2000-Ohio-477, 721 N.E.2d 1051. Only requirements two and three are at issue here as Judge Marshall has clearly exercised judicial power in granting the Civ. R. 60(B) motion.
 A. Exercise of Unauthorized Power {¶ 24} Relying on the Supreme Court of Ohio's holding in State ex rel.Special Prosecutors v. Judges (1978), 55 Ohio St.2d 94, 378 N.E.2d 162, and its progeny, the attorney general contends that Judge Marshall patently and unambiguously lacked jurisdiction to grant a Civ. R. 60(B) motion for relief in the underlying criminal case. In SpecialProsecutors, the Supreme Court of Ohio granted the relator's request for a writ of prohibition to prevent the trial court from granting a motion to withdraw a guilty plea and conducting a new trial. The Court held that the trial court lost jurisdiction to grant a motion to withdraw a guilty plea and grant a new trial when the defendant lost the appeal of a conviction based upon the guilty plea. Id. at 97.
 {¶ 25} The Supreme Court further held that the trial court did not regain jurisdiction subsequent to the court of appeals' decision affirming the defendant's *Page 11 
conviction. Id. The Court reasoned that allowing the trial court to consider a Crim. R. 32.1 motion to withdraw a guilty plea subsequent to an appeal and affirmance by the appellate court "would affect the decision of the reviewing court, which is not within the power of the trial court to do." Id. at 97-98. Thus, the court found "a total and complete want of jurisdiction by the trial court to grant the motion to withdraw [the defendant's] plea of guilty and to proceed with a new trial." Id. at 98.
 {¶ 26} However, Intervenor Rawlins contends the Supreme Court of Ohio has recently clarified the distinction between a court that lacks subject matter jurisdiction over a case and a court that improperly exercises the subject matter jurisdiction conferred upon it. SeePratts v. Hurley, 102 Ohio St.3d 81, 83, 2004-Ohio-1980, 806 N.E.2d 992,996, at ¶¶ 10-13; State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642,873 N.E.2d 306; State v. Simpkins, 117 Ohio St.3d 420, 2008-Ohio-1197,884 N.E.2d 568. Because Special Prosecutors does not address this distinction, Rawlins contends these newer cases call its continuing viability into question even though the Supreme Court of Ohio has never explicitly overruled that case.
 {¶ 27} Subject matter jurisdiction goes to the power of a court to adjudicate the merits of a case and is a "condition precedent to the court's ability to hear a case. If a court acts without jurisdiction, then any proclamation by that court is void." Pratts at ¶ 11. (Citations omitted.) A void judgment "has no legal force or effect, the invalidity of which may be asserted by any party whose rights are affected at any time and any place, whether directly or collaterally." Payne, supra, at ¶ 33, citing Black's Law Dictionary (8th Ed. 2004) 861.
 {¶ 28} However, "[o]nce a tribunal has jurisdiction over both the subject matter of *Page 12 
an action and the parties to it, `* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *.'" Id. at ¶ 12, citing State ex rel. Pizza v. Rayford (1992), 62 Ohio St.3d 382, 384,582 N.E.2d 992, quoting Sheldon's Lessee v. Newton (1854),3 Ohio St. 494, 499. Therefore, a voidable judgment is one that a court has jurisdiction to impose, but was imposed irregularly or erroneously.Payne, supra, at ¶ 27, citing State v. Filiaggi, 86 Ohio St.3d 230, 240,1999-Ohio-99, 714 N.E.2d 867 ("[w]here it is apparent from the allegations that the matter alleged is within the class of cases in which a particular court has been empowered to act, jurisdiction is present. Any subsequent error in the proceedings is only error in the `exercise of jurisdiction,' as distinguished from the want of jurisdiction in the first instance[,]" quoting In re Waite (1991), 188 Mich.App. 189, 200, 468 N.W.2d 912).
 {¶ 29} Citing Pratts at ¶ 34, Rawlins contends that subject matter jurisdiction is "determined as a matter of law and, once conferred, it remains." We have previously concluded that prior to a decision on appeal, a court may entertain a Civ. R. 60(B) motion for relief from judgment in a criminal matter under Crim. R. 57(B). See State v.Riggs (Oct. 4, 1993), Meigs App. Nos. 503 and 506, 1993 WL 405491. Therefore, the trial court clearly would have had jurisdiction to consider Rawlins' Civ. R. 60(B) motion prior to the appeal of his conviction.
 {¶ 30} However, once an appeal is filed, the trial court loses jurisdiction to consider a Civ. R. 60(B) motion unless the appellate court remands the case for the purpose of granting the trial court jurisdiction to decide the motion. Howard v. Catholic Social Services ofCuyahoga Cty., 70 Ohio St.3d 141, 147, 1994-Ohio-219, *Page 13 637 N.E.2d 890. Neither Pratts nor Payne address a trial court's post-appeal jurisdiction. Nor do they address the trial court's power to affect the decision of an appellate court. In Pratts, the trial court simply failed to follow the statutory procedure in a death penalty case (the failure to convene a three-judge panel to accept a guilty plea does not constitute a lack of subject-matter jurisdiction); in Payne, the Supreme Court concluded the holding in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, that portions of R.C. 2929.14 are unconstitutional renders some pre-Foster sentences erroneous exercises of jurisdiction, and thus merely voidable, rather than void ab initio. Thus, Pratts and Payne do not overrule Special Prosecutors sub silencio because neither of those cases deals with a matter where the trial court lost jurisdiction by virtue of a clear transfer of authority to an appellate court or some other means.
 {¶ 31} The trial court clearly lost jurisdiction to entertain a Civ. R. 60(B) motion pending the appeal to our court in Rawlins, supra. So the question becomes did the court regain jurisdiction by virtue of a subsequently filed Civ. R. 60(B) motion? Special Prosecutors, supra, seems dispositive of that question. Citing the trial court's lack of jurisdiction to take any action inconsistent with the judgment of the court of appeals, Special Prosecutors holds "that the trial court lost its jurisdiction when the appeal was taken, and absent a remand, it did not regain jurisdiction subsequent to the court of appeals decision." Id. at 97. Even without a remand, a trial court could regain jurisdiction to do an act that was "not inconsistent" with our prior exercise of jurisdiction, i.e., entertain a petition for post-conviction relief, or even entertain a Civ. R. 60(B) that was based upon an issue that was not argued or waived upon appeal. See Thomason v.Hamilton, Greene App. No. 07-CA-60, 2008-Ohio-3492, at fn. 2;Liberty Savings Bank *Page 14 v. Jones, et al., Lucas App. No. L-06-1124, 2007-Ohio-198, at ¶ 31;Polaris Ventures IV, LTD. v. Silverman, Delaware App. No. 2005 CAE 11 0080, 2006-Ohio-4138; Puls v. Puls, Montgomery App. No. 21029,2005-Ohio-6839, at ¶¶ 19-20.
 {¶ 32} However, it is clear that Judge Marshall could not consider the precise issues we rejected in Rawlins' direct appeal. Although we did remand the case to the trial court after issuing our decision and judgment in Rawlins, that remand was limited by a special mandate "to carry this judgment into execution." Once a party undertakes an appeal and absent a remand, the trial court is divested of jurisdiction to take any action that is inconsistent with the appellate court's exercise of jurisdiction. Special Prosecutors, supra, at 97; Post v. Post (1990),66 Ohio App.3d 765, 769, 586 N.E.2d 185. See, also, State v. Vild, Cuyahoga App. Nos. 87742 and 87965, 2007-Ohio-987, at ¶ 13 and State v.Sanchez, Defiance App. No. 4-06-31, 2007-Ohio-218, at ¶ 16.
 {¶ 33} After an appeal, "the trial court is divested of jurisdiction except `over issues not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as the collateral issue like contempt * * *.'" State ex rel. State Fire Marshalv. Curl, 87 Ohio St.3d 568, 570, 2000-Ohio-248, 722 N.E.2d 73, quotingSpecial Prosecutors at 97. Where an appellate court has already ruled on an issue in a direct appeal, a trial court's "reconsideration" of that same issue is inconsistent with the appellate court's exercise of jurisdiction and the doctrine of the law of the case. See Hopkins v.Dyer, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, at ¶ 15.
 {¶ 34} Following an appellate decision on the same facts and issue, the trial court is bound to adhere to the appellate court's determination of the applicable law in any *Page 15 
further proceedings. See Nolan v. Nolan (1984), 11 Ohio St.3d 1,462 N.E.2d 410. The doctrine of law of the case is necessary, not only for consistency of result and the termination of litigation, but also to preserve the structure of the judiciary as set forth in the Constitution of Ohio. Article IV of the Ohio Constitution designates a system of "superior" and "inferior" courts, each possessing a distinct function. The Constitution does not grant a court of common pleas jurisdiction to review a prior mandate of a court of appeals. State ex rel. Potain v.Mathews (1979), 59 Ohio St.2d 29, 32, 391 N.E.2d 343, 345.
 {¶ 35} In Rawlins' direct appeal, we considered and rejected the precise issues Rawlins raised in his Civ. R. 60(B) motion for relief from judgment. We previously determined that the trial court correctly refused to instruct the jury on involuntary manslaughter and to admit Rawlins' expert testimony. Judge Marshall acted inconsistently with our authority to review the criminal conviction and contrary to the doctrine of law of the case. Accordingly, he patently lacked jurisdiction to consider Rawlins' Civ. R. 60(B) motion.
 B. Adequate Remedy {¶ 36} Rawlins contends that this Court should not issue the writ of mandamus because Attorney General Rogers had an adequate remedy in the ordinary course of the law. Specifically, Rawlins contends that the attorney general, as an officer of the State of Ohio, had a representative in the courtroom — the county prosecuting attorney-who could have but did not file an appeal on her behalf. Attorney General Rogers contends that Rawlins' argument is immaterial because a writ of prohibition may issue *Page 16 
where a court patently and unambiguously lacks authority to act even if a direct appeal was available.
 {¶ 37} "If a lower court patently and unambiguously lacks jurisdiction to proceed in a cause, prohibition * * * will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions." State ex rel. Mayer v.Henson, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, at ¶ 12;Rosen v. Celebrezze, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, at ¶ 18. "Where jurisdiction is patently and unambiguously lacking, relators need not establish the lack of an adequate remedy at law because the availability of alternate remedies like appeal would be immaterial." State ex rel. Sapp v. Franklin Cty. Court of Appeals,118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, at ¶ 15.
 {¶ 38} We conclude that the trial court patently and unambiguously lacked jurisdiction to grant Rawlins' Civ. R. 60(B) motion. Therefore, the fact that the county prosecuting attorney could have appealed from the trial court's decision is irrelevant.
 III. CONCLUSION {¶ 39} Because Judge Marshall did not have jurisdiction to grant Rawlins' Civ. R. 60(B) motion, we grant the writ of prohibition.WRIT GRANTED. COSTS TO
 RELATOR.
McFarland, J.: Concurs in Judgment and Opinion.
Abele, P.J.: Dissents with Dissenting Opinion.
[1] Then Attorney General James M. Petro originally filed this action. During the pendency of the matter, Attorney General Nancy Rogers replaced Petro's successor. Accordingly, we have substituted her as Relator.
[2] Judge Marshall was not the original trial judge. Additionally, Mark Kuhn was sworn into office as the Scioto County Prosecuting Attorney in January 2005, replacing Prosecutor Lynn Grimshaw who held the office at the time Rawlins was convicted and when Rawlins filed his motion. *Page 17